UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
YUNETTA BARON,

                Plaintiff,

  - against -

PATRICIA LISSADE, LATICA LAMAR, IRINA
KLADOVA, LAURA FLYER, RAYMOND KARLIN,
CARLOS VELEZ, MICHAEL SILVERMAN, JANET
KIM, ANDREW SONPON, SUDARSANA
SRINIVASAN, and THE CITY OF NEW YORK,

                Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**
19-CV-6256 (RPK) (SMG)

RACHEL P. KOVNER, United States District Judge:

    Plaintiff Yunetta Baron, who was prosecuted by the New York City Commission on Human Rights (the "Commission") for housing discrimination, has sued eleven parties that allegedly participated in her prosecution. Plaintiff brought claims against seven current or former Commission attorneys and the City of New York for (i) malicious prosecution under 42 U.S.C. § 1983, (ii) malicious abuse of process under Section 1983 and New York law, and (iii) violation of the Fourteenth Amendment right to a fair trial under Section 1983. Plaintiff also alleges that Patricia Lissade, Irena Kladova, and Laticia Lamar (collectively, the "Alleged Conspirators"), conspired to falsely report plaintiff to the Commission. Corporation Counsel and Kladova each filed motions to dismiss. I previously granted Corporation Counsel's motion to dismiss all claims against the City and the malicious prosecution claim. I requested supplemental briefing from the parties regarding qualified immunity as to the remaining federal claims. For the reasons that follow, I now grant Corporation Counsel's motion to dismiss with respect to all

1

remaining federal claims based on qualified and absolute immunity. I decline to retain jurisdiction over the remaining state law claims. And I deny Kladova's motion to dismiss as moot.

## BACKGROUND

### I. Factual Background

The following factual allegations are taken from the complaint. For the purposes of the pending motions to dismiss, I assume all factual allegations in the complaint are true.

#### A. Patricia Lissade's Attempt to Rent Plaintiff's Apartment

In 2013, Patricia Lissade found an advertisement for plaintiff's apartment on Craiglist. Compl. ¶ 11. The advertisement stated that the apartment was available for rent. *Id.* ¶ 12. But the advertisement also cautioned that potential renters would need to be approved by the co-op board for plaintiff's building (the "Co-op Board"). *Ibid.*

Lissade asked plaintiff about renting her apartment. *Id.* ¶ 13. Although plaintiff was not available to show Lissade the apartment, she arranged for a family member to give Lissade a tour. *Id.* ¶ 15. After viewing the apartment, Lissade called plaintiff to express interest in renting the property. *Id.* ¶ 16. Plaintiff informed Lissade that she would be able to do so only if she was approved by the Co-op Board. *Id.* ¶ 17. That approval process, plaintiff explained, would involve a credit check and a screening for financial suitability. *Ibid.* When plaintiff shared this information, Lissade knew that she could never pass the Co-op Board's approval process because of her financial history. *Id.* ¶ 18.

Soon after Lissade visited the apartment, plaintiff was contacted by her brother. *Id.* ¶ 20. Plaintiff's brother needed a place to stay because he was leaving his marital residence. *Ibid.* Plaintiff conferred with the Co-op Board about whether her brother could move into the apartment. *Id.* ¶ 21. The Co-op Board told her that she did not need to seek approval for a family member to

live in the apartment. *Id.* ¶ 22. Plaintiff's brother ultimately moved into the apartment without submitting a rental application to the Co-op Board. *Id.* ¶ 23.

Plaintiff contacted Lissade to let her know that the apartment was no longer available. *Id.* ¶ 24. Plaintiff explained to Lissade that a relative was moving into the apartment. *Ibid.* At the time of this conversation, plaintiff had never met Lissade in person. *Id.* ¶ 25. And plaintiff did not know that Lissade was Black and Haitian. *Ibid.*

### B. The Alleged Conspiracy

Lissade conspired with her friend Laticia Lamar to fabricate a claim that plaintiff's decision was discriminatory. *Id.* ¶ 27. The plan was to recruit a white person to inquire about renting plaintiff's apartment and to convince plaintiff to show that white person the apartment. *Id.* ¶¶ 27-28. Once the white person "[got] access to the apartment and request[ed] an application, Lissade would bring a discrimination claim against plaintiff." *Id.* ¶ 28. Lamar asked her friend Irena Kladova, who lived in Maine, to participate in the scheme, and she agreed. *Id.* ¶¶ 30, 32.

Plaintiff did not take the bait. *Id.* ¶¶ 33-35. In the days that followed, plaintiff received calls from people who were purportedly interested in renting the apartment—none of whom identified themselves as Kladova. *Id.* ¶ 34. But plaintiff never gave rental applications to any of these callers. *Ibid*.

Nevertheless, Lissade, Lamar, and Kladova, decided to proceed with a discrimination claim against plaintiff. *Id.* ¶ 36. Lissade reported to the Commission that plaintiff had declined her rental application because Lissade was Haitian and that Lamar and Kladova could corroborate this account. *Id.* ¶¶ 41-42. Furthermore, Lissade falsely claimed that plaintiff spoke with Kladova and offered to show Kladova the apartment—even though plaintiff had previously told Lissade the apartment was unavailable. *Id.* ¶ 44.

3

### C. The Commission's Investigation of Plaintiff for Housing Discrimination

Two attorneys for the Commission, Laura Flyer and Raymond Karlin, conducted the initial investigation into the claims against plaintiff. *Id.* ¶¶ 84-96, 99-103. Flyer interviewed Lissade, drafted the complaint against plaintiff, and obtained an unsigned affidavit that was purportedly from Kladova. *Id.* ¶¶ 86, 90-91. Separately, both Flyer and Karlin interviewed a woman they believed to be Kladova. *Id.* ¶¶ 94, 100. During those interviews, the attorneys noticed discrepancies between the respective accounts given by Lissade and Kladova. *Id.* ¶ 49. For example, Flyer struggled to discern whether Kladova had a Russian accent, even though Lissade had claimed Kladova possessed a thick Russian accent. *Id.* ¶¶ 89, 95. Karlin also documented that Kladova did not recall ever being promised a rental application by plaintiff—directly contradicting what Lissade had told the Commission. *Id.* ¶ 101.[1] And Karlin observed that Kladova recalled a conversation about a two-bedroom apartment, even though the apartment was a studio. *Id.* ¶ 112.

Lissade was dissatisfied with the Commission's work. *Id.* ¶ 97. She complained about Flyer to Carlos Velez, one of the supervising attorneys at the Commission. *Ibid.* She then complained about both Flyer and Velez to Deputy Commissioner Clifford Mulqueen. *Id.* ¶ 98. Eventually, Velez, Flyer, and Karlin issued a finding of probable cause against plaintiff. *Id.* ¶ 104. According to plaintiff, the finding of probable cause was a "sham." *Id.* ¶ 108. Plaintiff asserts the Commission attorneys issued this finding "solely to forestall further complaints" about their job performance to high ranking officials at the Commission. *Id.* ¶¶ 104, 107, 109.

---

[1] Elsewhere in the complaint, plaintiff alleges that Kladova *did* tell the Commission that plaintiff had offered to show her the apartment and had given her a rental application. *Id.* ¶ 37.

### D.    The Commission's Prosecution of Plaintiff

After the issuance of a probable cause finding, all of the defendant Commission attorneys employed improper discovery tactics to forestall further complaints from Lissade.  For example, the Commission attorneys:

- Concealed Karlin's notes documenting inconsistencies in Kladova's and Lissade's respective accounts, *id.* ¶¶ 113-14, 128;

- Refused to acknowledge or investigate evidence that would refute Lissade's claims, *see, e.g., id.* ¶¶ 118, 127, 129;

- Served a subpoena on plaintiff for records, even though the subpoena was not signed by a judge as was required, *id.* ¶ 141; and

- Sought emotional damages from plaintiff despite knowing Lissade's medical records undermined any case for emotional damages, *id.* ¶ 152; *see id.* ¶¶ 149-151.

The Commission's discrimination case against plaintiff went to trial in November 2016. *Id.* ¶¶ 159-60.  At the trial, Commission lawyers allegedly acted inappropriately.  For example, both Karlin and Flyer testified at the trial and, in the process, committed perjury and violated ethical rules.  *See, e.g., id.* ¶¶ 111, 116, 161, 193-94.  The trial concluded "with a recommendation by an administrative law judge that the case against plaintiff be dismissed on the merits." *Id.* ¶ 67. The administrative law judge found (among other things) that Lamar and Lissade were not credible, that it was likely that Lissade had promised to compensate Lamar for her assistance in the prosecution of plaintiff, and that plaintiff had not engaged in any discrimination against Lissade.  *Ibid.*  Several months after trial, the Chair of the Commission dismissed the complaint against plaintiff.  *Id.* ¶ 70.

## II.    Procedural Background

Plaintiff filed this lawsuit raising three claims.  The first count asserted a claim against the Alleged Conspirators for common-law malicious abuse of process. *Id.* ¶¶ 9-79.  The second and third counts asserted claims against the City Defendants for (i) malicious prosecution under 42

U.S.C. § 1983, (ii) malicious abuse of process under Section 1983 and New York law, and (iii) violation of the Fourteenth Amendment right to a fair trial under Section 1983.[2]  Compl. ¶¶ 80-194.  Both Corporation Counsel and Kladova filed motions to dismiss.

On April 6, 2021, I granted Corporation Counsel's motion as to all claims against the City and as to the malicious prosecution claim.  *See* Order dated Apr. 6, 2021 (Dkt. #39).  Because the parties' briefs contained limited discussion of how the doctrine of qualified immunity applies to this case, I ordered supplemental briefing on whether qualified immunity forecloses plaintiff's claims for violation of her right to a fair trial and for malicious prosecution.  *Id.* at 3-4.  The parties filed letters in response.  *See* Defs.' Letter dated Apr. 20, 2021 (Dkt. #40); Pl.'s Corrected Letter dated Apr. 28, 2021 (Dkt. #43).

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state[s] a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The facial "plausibility standard is not akin to a probability requirement," but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ibid*. (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely."  *Twombly*, 550 U.S. at 556 (internal quotation marks and citation omitted).

---

[2] Count Three is purportedly alleged against "all defendants."  Compl. ¶ 176.  But the complaint later clarifies explicitly that the phrase "all of the defendants" refers solely to the City Defendants.  *See id.* ¶ 180.  Plaintiff confirms this understanding of the complaint in her opposition to Kladova's motion to dismiss.  *See* Pl.'s Opp'n to Kladova's Mot. to Dismiss at 12 (Dkt. #37).

When analyzing whether a complaint should be dismissed, a court must generally constrain its review to the complaint itself, documents attached to the complaint as exhibits, documents incorporated by reference in the complaint, and certain documents that are relied on so heavily in the complaint as to be integral to the document. *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010). The court must also accept all facts alleged in the complaint as true. *See Iqbal*, 556 U.S. at 678. Even so, the court, is not obligated to adopt "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Id*. at 678-79.

## DISCUSSION

Plaintiff's remaining Section 1983 claims are dismissed because, as explained below, they are barred by qualified and absolute immunity. Having dismissed plaintiff's remaining federal causes of action, I decline to exercise supplemental jurisdiction over plaintiff's state law claims.

**I.    The Remaining Section 1983 Claims Against the Commission Attorneys Are Dismissed**

Neither of plaintiff's remaining Section 1983 claims against the Commission attorneys are viable. First, qualified immunity bars plaintiff's claim that the Commission attorneys violated her right to a fair trial. Second, qualified and absolute immunity bar plaintiff's claim under Section 1983 for malicious abuse of process.

**A.    Fourteenth Amendment Right to a Fair Trial**

Qualified immunity bars plaintiff's claim against the Commission attorneys for violating plaintiff's constitutional right to a fair trial. *See* Compl. ¶¶ 192-93. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam) (internal quotation marks and citation omitted). While qualified immunity "does not

7

require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018) (per curiam) (citation omitted). Courts may "grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Booker v. Graham*, 974 F.3d 101, 106 (2d Cir. 2020) (citation omitted).

Here, plaintiff's fair-trial claim falters because she has not alleged a violation of a clearly established constitutional right. The Second Circuit has recognized a Fourteenth Amendment right to a fair criminal trial, free of misconduct such as fabrication of evidence. *See, e.g., Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000); *see Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). It has found such claims actionable because they involve the deprivation of liberty. *See, e.g., Zahrey*, 221 F.3d at 355; *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (listing elements of a fair trial claim, including that "the plaintiff suffer[ed] a deprivation of liberty"). Thus, in *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) (internal quotation marks omitted), the court of appeals cautioned that there is no freestanding "constitutional right not to have a prosecutor manufacture evidence," because "the manufacture of false evidence, in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right." The plaintiff there stated a fair-trial claim, the court explained, because he had gone on to allege "the deprivation of his liberty" from the fabrication. *Ibid.*; *see id.* at 349, 355.

In contrast, the Second Circuit "has never recognized a constitutional right to be free from fabrication of evidence outside of the criminal context." *Rolon v. Henneman*, 443 F. Supp. 2d 532, 538 (S.D.N.Y. 2006), *aff'd,* 517 F.3d 140 (2d Cir. 2008). Indeed, several courts in this circuit have rejected fair-trial claims arising out of civil or administrative proceedings, reasoning that "a denial

8

of the right to a fair trial claim, as it is conceived of in the Second Circuit, is meant to redress unfairness in criminal proceedings that may go before a jury, and not civil bench trials." *Zappin v. Cooper*, No. 16 Civ. 5985 (KPF), 2018 WL 2305562, at *3 (S.D.N.Y. May 18, 2018); *see Rolon*, 443 F. Supp. 2d at 538-540.

      The only case that plaintiff identifies recognizing a fair-trial right in a civil proceeding is an out-of-circuit decision involving juvenile dependency proceedings: *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017). *See* Pl.'s Corrected Letter at 2-4. Out-of-circuit caselaw can be relevant "to the qualified immunity analysis," but "only where the cases clearly foreshadow a particular ruling on the issue" at hand. *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019) (internal quotation marks and citation omitted). That standard is not met here. *Hardwick* reasoned that a parent had stated a clearly established Section 1983 claim based on use of perjured testimony and fabricated evidence in a juvenile dependency proceeding because such misconduct would violate a child's clearly established "Fourth and Fourteenth Amendment constitutional rights to her familial relationship with her mother." *Hardwick*, 844 F.3d at 1114, 1117. The court relied on what it described as a Fourteenth Amendment liberty interest of parents and children not to be "separated by the state without due process of law except in an emergency." *Id.* at 1116. That out-of-circuit ruling is of limited relevance here, because plaintiff cannot suggest a comparable family liberty interest was implicated by the Office of Administrative Trials and Hearings ("OATH") proceeding regarding housing discrimination. Given this state of the law, a right to be free from fabrication of evidence and similar misconduct in a civil or administrative trial was not clearly established at the time of the events in this case. *Cf. Zahrey*, 221 F.3d at 356-357 (finding the "right not to be deprived of liberty as a result of [a] government officer's fabrication of evidence" to be clearly established based on cases recognizing such a right) (emphasis omitted).

9

Plaintiff's arguments to the contrary do not persuade. Plaintiff suggests that the OATH proceeding "threaten[ed her] liberty because . . . failure to comply with a mandate of OATH can result in imprisonment." Pl.'s Corrected Letter at 2 n.2. But while New York makes it a crime punishable by imprisonment to interfere with the Commission or to violate a Commission order, *see* N.Y.C. Admin. Code § 8-129, plaintiff cites no authority to suggest that the Commission could have imprisoned her based on its determinations regarding housing discrimination at the OATH proceeding.

Plaintiff finally argues that the alleged conduct here was so "inherently and obviously unlawful" that "there does not need to be a case on point for a plaintiff to . . . overcome qualified immunity." Pl.'s Corrected Letter at 4. The Supreme Court has indeed recognized that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see Taylor v. Riojas*, 141 S. Ct. 52, 53-54 (2020) (per curiam). But as I explain above, under Second Circuit law, defendants' alleged conduct was anything but an inherent and obvious violation of the Fourteenth Amendment right to a fair trial. Decisions of the court of appeals have suggested that such a claim requires deprivation of a liberty interest that is lacking here, and decisions of district courts have squarely held that such claims are not viable in civil cases. Because there is no clearly established law on this circuit that fabrication of evidence during an administrative bench trial *ever* violates the Constitution, defendants are entitled to qualified immunity. Plaintiff's claim for violation of her right to a fair trial is dismissed.

    **B.**    **Malicious Abuse of Process**

Plaintiff asserts claims against some of the Commission attorneys for malicious abuse of process in violation of Section 1983. *See* Compl. ¶¶ 174-94. The elements of a malicious-abuse-of-process claim are defined by state law. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994);

10

*Tuccillo v. Cnty. of Nassau*, 723 F. App'x 81, 82 (2d Cir. 2018). Under New York law, a plaintiff must plead that the defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Hernandez v. United States*, 939 F.3d 191, 204 (2d Cir. 2019). Here, the "regularly issued legal process" that plaintiff invokes is a "notice of probable cause," Compl. ¶ 185, or "finding of probable cause," which triggered plaintiff's "prosecution [by] OATH" and administrative trial, *id.* ¶ 176. As conduct constituting the improper employment of such process, plaintiff alleges that Commission attorneys (i) conducted "a sham investigation of Lissade's claims" before the issuance of the process, *id.* ¶ 179; (ii) "issued [the] finding of probable cause" despite "knowing that no such probable cause existed," *id.* ¶ 176; *see id.* ¶ 177, and then (iii) sought to bolster the probable-cause finding and prosecution by "concealing exculpatory and impeaching evidence" and by "concealing the fact [that] they issued illegal subpoenas," *id.* ¶ 178; *see id.* ¶ 184. As explained below, plaintiff cannot premise liability for malicious abuse of process on any of this conduct.

      **1.      The Commission Attorneys Are Not Liable for Conduct that Occurred Prior to the Finding of Probable Cause**

Plaintiff cannot sustain a Section 1983 claim for malicious abuse of process for Commission attorneys' alleged improper investigation before issuing a finding of probable cause. *See* Compl. ¶ 179. In construing the element of malicious abuse of process requiring that a defendant have "employ[ed] regularly issued legal process," *Hernandez,* 939 F.3d at 204, the Second Circuit has emphasized that the "gist of abuse of process is the improper use of process *after* it is regularly issued," *Cook*, 41 F.3d at 80 (emphasis added); *see Okudinani v. Rose*, 779 F. App'x 768, 773 (2d Cir. 2019) (same). Courts accordingly dismiss claims premised on conduct that occurred before the issuance of process. *See, e.g.*, *Gilman v. Marsh & McLennan Cos.*, 654

11

F. App'x 16, 16 (2d Cir. 2016) (affirming dismissal of abuse-of-process claims because they were based on events that "unquestionably came *before* the process in question"); *Dowd v. DeMarco*, 314 F. Supp. 3d 576, 585 (S.D.N.Y. 2018). Plaintiff has therefore failed to state a claim of malicious abuse of process against any of the Commission attorneys for their alleged improper investigation prior to the issuance of a probable cause finding.

### 2. Qualified Immunity Prevents the Commission Attorneys from Being Held Liable for the Issuance of a Probable Cause Finding

Qualified immunity bars plaintiff from suing Commission attorneys for malicious abuse of process based on their issuance of a probable cause finding against her. *See* Compl. ¶¶ 176-177. As explained above, qualified immunity attaches "when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White*, 137 S. Ct. at 551 (internal quotation marks and citation omitted). At the time of the events in this case, there was—at minimum—uncertainty about whether a malicious abuse of process claim under Section 1983 could be premised on the issuance of process itself. As plaintiff notes, some courts in this Circuit had concluded that the issuance of process could support a claim for malicious abuse of process. *See* Pl.'s Corrected Letter at 5, 5 n.5; *cf. Manhattan Enter. Grp. LLC v. Higgins*, 816 F. App'x 512, 514 (2d Cir. 2020) (internal quotation marks and citation omitted) (stating in an unpublished decision post-dating the events in this case that the New York Court of Appeals has indicated that "nothing in its precedents would seem to preclude an abuse of process claim based on the issuance of the process itself"). But others had reached the opposite conclusion. *See, e.g., Orellana v. Macy's Retail Holdings, Inc.*, No. 17 Civ. 5192 (NRB), 2018 WL 3368716, at *16 n.19 (S.D.N.Y. July 10, 2018); *Richardson v. N.Y.C. Health & Hosps. Corp.*, No. 05 Civ. 6278(RJS), 2009 WL 804096, at *16-17 (S.D.N.Y. Mar. 25, 2009). Because of the

12

uncertain status of the law, the Commission attorneys are entitled to qualified immunity against a malicious abuse of process claim based on their issuance of a probable cause finding.

### 3. Absolute Immunity Prevents the Commission Attorneys from Being Held Liable for Testimony

Insofar as plaintiff seeks to pursue a malicious abuse of process claim against Commission attorneys for testifying against plaintiff at her administrative trial, those claims are barred by absolute immunity. In the Section 1983 context, the Supreme Court has held that a "trial witness has absolute immunity with respect to any claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (emphasis omitted). Trial witness immunity applies not merely in judicial proceedings, but also in administrative proceedings that serve a judicial function. *See, e.g.*, *Butz v. Economou,* 438 U.S. 478, 512-13 (1978) ("We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages."); *Diaz v. Soc. Sec. Admin. Disability*, No. 20-CV-1551 (LLS), 2020 WL 1503434, at *3 (S.D.N.Y. Mar. 27, 2020) (holding that witnesses in Social Security Administration proceedings were protected by absolute immunity); *Lewis v. City of New York*, 18 F. Supp. 3d 229, 238 (E.D.N.Y. 2014) (holding that defendant was absolutely immune for allegedly defaming plaintiff because the defendant had been testifying as a witness at an administrative proceeding); *Anghel v. N.Y. State Dep't of Health*, 947 F. Supp. 2d 284, 300 (E.D.N.Y. 2013) (holding that witnesses involved in medical license revocation hearing were protected by absolute immunity because the hearing was "analogous to judicial proceedings"), *aff'd,* 589 F. App'x 28 (2d Cir. 2015). Courts in this circuit have recognized that an administrative trial before the Commission is the type of judicial proceeding at which participants merit absolute immunities. *See Rudow v. City of New York*, 642 F. Supp. 1456, 1461 (S.D.N.Y. 1986) (holding that a Commission attorney qualified for absolute immunity

13

because she acted in a prosecutorial capacity and the Commission trial was "functionally comparable" to a judicial proceeding), *aff'd*, 822 F.2d 324, 328-29 (2d Cir. 1987). The Commission attorneys who testified at plaintiff's administrative trial are therefore immune from liability premised on their testimony.

### 4. Absolute Immunity Bars Plaintiff's Remaining Allegations of Malicious Abuse of Process

Plaintiff's remaining allegations of malicious abuse of process are barred by absolute prosecutorial immunity. When assessing whether claims are barred by absolute immunity, courts focus on "the nature of the function performed" rather than the "identity of the actor who performed it." *Bernard v. Cnty. of Suffolk*, 356 F.3d 495, 503 (2d Cir. 2004) (citation omitted). Prosecutors are entitled to absolute immunity "when they function as advocates for the state in circumstances intimately associated with the judicial phase of the criminal process." *Id.* at 502 (internal quotation marks and citation omitted). "[N]on-prosecutor officials" enjoy the same protections when they perform "functions analogous to those of a prosecutor"—such as instituting an administrative proceeding. *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010); *see, e.g.*, *Rudow v. City of New York*, 822 F.2d 324, 328 (2d Cir. 1987) (extending absolute immunity to a Commission lawyer). If an actor is performing a function covered by absolute immunity, "the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused." *Bernard*, 356 F.3d at 503. For example, prosecutors retain absolute immunity even when a plaintiff alleges the "knowing use of perjured testimony" or the "deliberate withholding of exculpatory information." *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (citation omitted). Such conduct may be "reprehensible," but it still reflects the exercise of prosecutorial discretion. *Ibid.* In contrast, officials are not absolutely immune when they act "without any colorable claim of authority." *Ibid.* Nor are officials protected when they perform investigative

14

functions typically associated with police or other law enforcement officers. *See, e.g., Kalina v. Fletcher*, 522 U.S. 118, 129-30 (1997); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273-74 (1993); *Burns v. Reed*, 500 U.S. 478, 493 (1991). Investigative work done "[b]efore any formal legal proceeding has begun and before there is probable cause" is only entitled to qualified immunity. *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir.1995).

Applying these principles, the Commission attorneys are entitled to absolute immunity from plaintiff's remaining malicious-abuse-of-process allegations. The remaining allegations are that Commission attorneys abused process by "tr[ying] to bolster their case and the issuance of their finding of probable cause (and related prosecution) by concealing exculpatory evidence . . . and concealing the fact that they issued illegal subpoenas." Compl. ¶ 178. The Commission attorney have absolute immunity as to such alleged activities because they are "activities that can fairly be characterized as closely associated with the conduct of litigation." *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986); *see Morales v. City of New York*, 59 F. Supp. 3d 573, 579 (S.D.N.Y. 2014) (explaining that prosecutors have absolute immunity for claims of concealment of exculpatory evidence) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 n.34 (1976)). Regardless of whether that conduct is reprehensible, it reflects the exercise of prosecutorial discretion. *See Shmueli*, 424 F.3d at 237.

In sum, absolute and qualified immunity bar plaintiff's claims of malicious abuse of process against the Commission attorneys.

## II. The Court Declines to Retain Jurisdiction Over Plaintiff's State Claims

Having dismissed plaintiff's federal claims, I decline to retain jurisdiction over her state claims. *See* 28 U.S.C. § 1367(c). Four factors bear on whether it is appropriate to exercise supplemental jurisdiction: "judicial economy, convenience, fairness, and comity." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018). These factors counsel in favor of

dismissing plaintiff's state-law claims. This case is still in its preliminary stages. And it would be at least as convenient and fair for the parties to litigate these state-law claims in state court.

Indeed, "[i]t is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2006); *see Pension Benefit Guar. Corp. ex rel. St Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (In the "usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Brzak v. United Nations*, 597 F.3d 107, 113-14 (2d Cir. 2020) (internal quotation marks and citation omitted) ("[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well."). Plaintiff has not articulated any reason to exercise supplemental jurisdiction here. Her state-law claims are therefore dismissed.

## CONCLUSION

For the foregoing reasons, Corporation Counsel's motion to dismiss is granted. Kladova's motion to dismiss is denied as moot.

SO ORDERED.

                                              */s/ Rachel Kovner*
                                              RACHEL P. KOVNER
                                              United States District Judge

Dated: September 27, 2021
       Brooklyn, New York